UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY L. KILGORE III, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-4365 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| FEDEX FREIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After plaintiff Larry L. Kilgore III ("Kilgore") was suspended and then discharged from his employment with defendant FedEx Freight, Inc. ("FedEx"), he filed a complaint in which he alleges he was discriminated against on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, Section 1981 and the Illinois Human Rights Act. Defendant has filed a motion for summary judgment. For the reasons set forth below, the Court denies the motion for summary judgment.

**I. BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact undisputed. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider any facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

Defendant FedEx employs drivers in the Chicago area. Among those drivers were plaintiff, who began working for FedEx in April 2015, and Don Romero ("Romero"). Plaintiff is African American; Romero is not.

During the relevant time period, FedEx maintained certain employment policies, including an employee-conduct policy and a performance-improvement policy. The employee-conduct policy stated, among other things:

> The following items represent unacceptable performance and behavior in the work environment. While not intended to be all-inclusive, this document lists areas that are basic to the welfare of employees, customers and the company.
>
> * * *
>
> **Fighting or Horseplay**
>
> Fighting or Horseplay is prohibited. This includes provoking fighting or violence by others through words or actions, physical fighting and threatening or intimidating behavior in the workplace.
>
> * * *
>
> **Workplace violence**
>
> Workplace violence is not limited to an act of physical harm to someone. It also includes oral and written statements, gestures and expressions that communicate a direct or indirect threat of harm; harassment; intimidation; or other such disruptive behavior.
>
> * * *
>
> Workplace violence is taken seriously at FXF and individuals who commit such acts are subject to corrective action, up to and including termination of employment or any agreements with FXF. Incidents of workplace violence, threats of violence or suspicious behavior must be reported immediately. Contact local management, FXF Security, Human Resources or use the Alert Line to report instances of workplace violence or a developing situation.

(Conduct of Employees Policy at 1, 3/Docket 57-13 at 2, 4). The performance-improvement policy stated, among other things:

> For all but the most serious offenses . . . a process of progressive corrective action will be followed.
>
> * * *
>
> **REMOVAL FROM SERVICE AND EXCEPTIONS TO PERFORMANCE IMPROVEMENT AND CORRECTIVE ACTION**

2

>For behavior that is deemed a serious offense, leadership may immediately remove an employee from service pending a decision about the appropriate level of corrective action. Once a decision is reached, the appropriate corrective action or termination will be communicated to the employee.
>
>**Note**: Removal from service differs from suspension in that a suspension occurs in conjunction with a critical written corrective action.
>
>While it is impossible to list every type of behavior that may be deemed a serious offense, the below list provides examples (and is not all inclusive) of the most severe and willful offenses that are not subject to the standard performance improvement and progressive corrective action process. Unless indicated otherwise in company policy, employees are subject to immediate removal from service and possible termination (pending investigation) for the following offenses:
>
>* * *
>
>* Workplace violence, such as:
>   * Exhibiting threatening or intimidating behavior
>   * Fighting or provoking others by words or actions

(Performance Improvement and Corrective Action Policy at 1, 2/Docket 57-15 at 2, 3).

On August 10, 2017, after completing his deliveries, plaintiff was filling out paperwork in the drivers' lounge. Also present were a handful of other drivers, including Romero. Within earshot was a dispatch office, where sat Matt Terrence ("Terrence"), an operations supervisor.

Romero called plaintiff "dumb" or "stupid" (or some similar insult), prompting plaintiff to put on headphones. Romero then hit plaintiff on the side of plaintiff's headphones, knocking them off of plaintiff's ear. Plaintiff told Romero to "back off." Romero told plaintiff that if plaintiff touched Romero, plaintiff would lose his job. Plaintiff yelled to Terrence to get Romero out of his face. Plaintiff also said, "Get [Romero] away from me before I slap the shit out of him," and "Get him away from me before things are about to go down." When Terrence arrived, Romero was dancing around plaintiff and teasing him. Terrence asked Romero five or six times to leave before Romero finally left. Later, plaintiff complained to defendant's Alert Line that he had been physically attacked by Romero.

3

Plaintiff was relieved of duty, which is to say he was sent home without pay during an investigation. Romero was not relieved of duty during the investigation. The investigation was conducted by Brian Simikoski ("Simikoski"), who worked for defendant as a security specialist.

During the investigation, Simikoski interviewed a number of witnesses. Simikoski interviewed Romero for eight minutes and plaintiff for 30. During plaintiff's interview, Simikoski called plaintiff "Waldo," which was a nickname plaintiff disliked. (Plaintiff had previously asked his supervisors for help in stopping employees from calling him "Waldo.") During Romero's interview, Romero admitted to having touched plaintiff's headphones. Romero told Simikoski the incident lasted 30 seconds and was "over before it began." Romero told Simikoski he was not afraid, because "it was just words."

Prior to the events of August 10, 2017, neither plaintiff nor Romero had been subject to corrective action. As a result of the investigation, plaintiff and Romero were each given corrective action, but they were treated differently. As a result of the investigation, Simikoski concluded that plaintiff had violated defendant's policy against workplace violence. Roger Maco ("Maco"), one of defendant's employee-relations advisors, concluded plaintiff "made very inappropriate and threatening comments directed towards Mr. Romero," and, therefore, Maco "support[ed] termination of employment." Defendant terminated plaintiff's employment.

As for Romero, Simikoski concluded that, because Romero had touched plaintiff's headphones rather than plaintiff, Romero had not acted aggressively. Maco concluded Romero "made physical contact with [plaintiff] by tapping his headphones and asking him if he was 'dumb or stupid'" after calling him "Waldo." Maco recommended Romero be suspended for three days. Romero's "corrective action form" states he was suspended due to his "[p]rovoking or threatening behavior."

Separately, another employee, Bill Lyon ("Lyon"), was accused of pushing an employee back in 2016. Lyon, who is not black, was not discharged.

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. DISCUSSION

Plaintiff claims that defendant suspended and discharged him on the basis of his race in violation of Title VII (Count II), the Illinois Human Rights Act (Count III) and 42 U.S.C. § 1981 (Count I). The parties agree that the same standard applies to all three claims (Def. Brief at 5 n. 2/Docket 55; Plf's Brief at 2-3/Docket 58), and that is mostly correct, though imprecise. It is true that the standards for Title VII apply to claims under the Illinois Human Rights Act. *Reed v. Freedom Mortgage Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) ("Illinois courts apply the federal Title VII framework to claims of discrimination made under the Illinois Human Rights Act."); *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill.2d 172, 178 (Ill. 1989). It is also true that

the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to all of the claims. *See Fields v. Board of Ed. of City of Chi.*, 928 F.3d 622, 625 (7th Cir. 2019) ("We apply the same standard to discrimination claims under § 1981, Title VII and the Age Discrimination in Employment Act."). Title VII and § 1981 claims differ, though, in one important respect.

Title VII of the Civil Rights Act of 1964 makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, "an unlawful employment practice is established when the complaining party demonstrates that race . . . was a *motivating factor* for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m) (emphasis added). The question for a Court considering a claim for discrimination under Title VII (or the Illinois Human Rights Act) is "whether the evidence would permit a reasonable fact-finder to conclude that [plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor." *McCurry v. Kenco Logistics Serv., LLC*, 942 F.3d 783, 788 (7th Cir. 2019). Of course, the Seventh Circuit has not overruled the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and, thus, "*McDonnell Douglas* burden-shifting [remains] a viable option for pursuing employment discrimination claims." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018).

A claim under § 1981 differs from a claim under Title VII in that, to establish a claim under § 1981, a plaintiff must show "that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Assoc. of African American-Owned Media*,

6

\_\_ U.S. \_\_, 140 S.Ct. 1009, 1019 (2020). Because a claim under § 1981 requires but-for causation, unlike a claim under Title VII (which requires that race be a motivating factor, 42 U.S.C. § 2000e-2(m)), it is more akin to a claim under the Age Discrimination in Employment Act ("ADEA"). To prevail on a claim for age discrimination, a plaintiff must put forth evidence that age was the "but-for" cause of the adverse action. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse action."). Under the ADEA, a plaintiff "may carry his burden by presenting direct or circumstantial evidence" that defendant discharged him "because of his age," or he may proceed under the "burden-shifting approach by producing evidence that a similarly-situated person not in the protected class was treated more favorably." *Wrolstad v. Cuna Mutual Ins. Soc.*, 911 F.3d 450, 454 (7th Cir. 2018). Ultimately, the question on a summary judgment motion is "whether the evidence as a whole would allow a reasonable jury to find that plaintiff suffered an adverse job action because of his age." *Wrolstad*, 911 F.3d at 454. Substitute the word race for age, and one has the appropriate standard for a claim under § 1981. With these standards in mind, the Court considers defendant's motion for summary judgment on plaintiff's claims.

In this case, plaintiff has put forth sufficient evidence from which a reasonable jury could conclude that plaintiff was suspended and discharged because of his race. First, plaintiff has made out a *prima facie* case of discrimination, a standard which is not onerous. *See Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous. . . . [but] serves an important function in litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection."). Plaintiff has put forth evidence that he was meeting his employer's expectations (he

7

had never before been the subject of corrective action), that he was subjected to adverse employment actions (he was relieved of duty without pay during the investigation and discharged) and that a similarly-situated employee (Romero) outside of his protected class was treated more favorably (Romero was not relieved of duty during the investigation and was not discharged).

Defendant argues that Romero was not similarly-situated, because plaintiff threatened violence. The Court disagrees. *See Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) ("[T]he proposed comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision."); *see also Barbera*, 906 F.3d at 629 ("[A]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them.") (quoting *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017)). Here, plaintiff has put forth evidence that Romero and plaintiff had the same job, were involved in the August 10, 2017 incident that was investigated by the same employee (Simikoski) and had their fates decided by the same employee (Maco). Their conduct was slightly different: plaintiff put forth evidence that the incident began when Romero called plaintiff dumb and/or stupid and hit plaintiff on his headphones, thereby knocking the headphones off plaintiff's head. Plaintiff then threatened to slap Romero. Their conduct, though, was sufficiently similar to warrant a reasonable fact finder to conclude that impermissible animus affected the employer's decision, because the conduct was of comparable seriousness. *See Coleman*, 667 F.3d at 850-51 ("That they did not break the rule in precisely the same manner does not mean that summary judgment was appropriate. By directly threatening

another employee with a knife in the workplace, [the two comparable employees] engaged in conduct that appears, at least for purposes of summary judgment, at least as serious as [plaintiff's] indirect 'threat' against [another employee]—and arguably more."). If anything, in the light most favorable to plaintiff, the slight difference in conduct makes plaintiff's case stronger: the non-black employee was merely suspended for actually committing a battery, while the black employee was actually discharged for merely threatening to commit a battery. *See Nichols v. Illinois Dep't of Transp.*, 152 F. Supp.3d 1106, 1135 (N.D. Ill. 2016) ("It goes without saying that actual violence is much more serious and explicit than threats of violence").[2] Plaintiff has put forth evidence that he was suspended and discharged under circumstances from which a jury could infer discrimination.

In its brief, defendant articulates a legitimate, non-discriminatory reason for its decision to terminate plaintiff's employment, but it fails to articulate a reason for relieving plaintiff (but not Romero) of his duties during the investigation. Accordingly, defendant is not entitled to summary judgment on plaintiff's claim that he was suspended due to his race. As to the termination, defendant says it "terminated [plaintiff] for violating [defendant's] workplace violence policy due to the serious and threatening nature of Kilgore's comments, to which he admitted." (Plf. Brief at 10/Docket 55 at 11). Defendant argues that plaintiff has no evidence of pretext, but the Court again disagrees.

---

[2] Defendant seems to be suggesting there is a vast difference between hitting a person and hitting the headphones a person is wearing. Each, though, constitutes battery. *See Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003) (for purposes of battery, "[t]ouching anything attached to someone else, such as the person's glasses, is treated the same as touching the body") (Indiana law); *Powers v. Kallis*, Case No. 18-cv-1174, 2018 WL 10322041 at *2 (C.D. Ill. July 20, 2018) ("The common law of battery recognizes that unconsented contact with anything intimately connected with the body can constitute a battery."); *People v. Beifeld*, 171 Ill.App. 614 (First Dist. 1912).

9

Plaintiff has put forth evidence that defendant's workplace violence policy was selectively enforced, and "evidence of selective enforcement of a rule 'calls into question the veracity of the employer's explanation.'" *Coleman*, 667 F.3d at 857 (quoting *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 601 (7th Cir. 2001)); *Baker v. Macon Resources, Inc.*, 750 F.3d 674, 677 (7th Cir. 2014) ("selective enforcement or investigation of a disciplinary policy can also show pretext"); *see also Ismail v. Brennan*, 654 Fed.Appx. 240, 245 (7th Cir. 2016) ("[Plaintiff] provided evidence that [other employees] were situated similarly to him but treated more leniently. Because this evidence permits an inference that the defendant selectively enforced its policies on workplace safety and disobedience of supervisor orders, a fact question exists over the [defendant's] stated reason for disciplining him."). Plaintiff put forth evidence that defendant's progressive-discipline policy defined workplace violence as "exhibiting threatening or intimidating behavior" and as "fighting or provoking others by words or actions." Plaintiff put forth evidence that Romero was found to have engaged in "provoking or threatening behavior." Plaintiff put forth undisputed evidence that he was relieved of his duties and discharged, while Romero was merely suspended for three days. Plaintiff has put forth sufficient evidence from which a reasonable jury could conclude that he was suspended and discharged because of his race. Of course, a reasonable jury could also conclude that plaintiff's conduct was more egregious and warranted a tougher penalty.

Defendant has not shown that it is entitled to judgment as a matter of law on plaintiff's claims. Its motion for summary judgment is denied.

## IV.	CONCLUSION

For all of these reasons, the Court denies defendant's motion [54] for summary judgment.

This case is set for status on July 8, 2020 at 9:30 a.m.

SO ORDERED.                                                         ENTERED:  May 7, 2020

                                                                                          _____
                                                                                          JORGE L. ALONSO
                                                                                          United States District Judge